J-S19020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                            :           PENNSYLVANIA
                                            :
                  v.                         :
                                            :
                                            :
JALEEL GEDDES-KELLY           : 
                                            :
                Appellant         :     No. 1348 MDA 2022

Appeal from the Judgment of Sentence Entered July 12, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003794-2020

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED OCTOBER 20, 2023**

Jaleel Geddes-Kelly appeals from the judgment of sentence entered following his convictions for numerous offenses: corrupt organizations; conspiracy to violate corrupt organizations laws; conspiracy to commit access device fraud; dealing in proceeds of unlawful activities (promoting or carrying out unlawful activity); dealing in proceeds of unlawful activities (knowledge that property obtained is stolen or illegally obtained property); two counts of identity theft; theft by deception; access device fraud (publishes, makes, sells, gives or otherwise transfers to another); and access device fraud (possession with knowledge that such access device is counterfeit, altered, or

incomplete).[1] Geddes-Kelly's counsel has filed an **_Anders_**[2] brief and a motion to withdraw as counsel, and Geddes-Kelly has filed a _pro se_ response. We deny the petition and order the filing of a merits brief.

The trial court summarized the facts as follows:

David R. Fones testified that as an investigation specialist for Ahold, USA, the parent company of Giant Food Stores, he reviews and investigates large scale fraud and scams which impact the company's profit. (Transcript of Proceedings,: Jury Trial, "N.T." pp. 20-21). Mr. Fones began investigation in the instant case based upon a pattern of fraudulent credit card use to purchase gift cards in late 2016. (N.T. p. 21). The stores' asset protection division informed Mr. Fones that an African American female conducted repeated transactions of purchase of large quantities of gift cards in denominations of $100-$500. The stores' data analysis platform identified and notified Ahold of a large number of fraudulent credit card transactions. **_Id._** The stores collected photos and videos of the female, later identified as Tammy Gibson, and two African American males. (N.T. p. 22). The stores obtained Ms. Gibson's name by requesting identification from her at the time of a large gift card purchase. (N.T. p. 23).

Ahold utilizes a data collection platform, Shrink Trax, which records receipts from any individual along with the last four digits of the credit card used. **_Id._** Another platform Ahold utilizes collects information as to the entire credit card number. **_Id._** Based upon the report from the stores' asset protection division, Mr. Fones prepared a 128-page spread sheet which tracked fraudulent activity in the instant case. (N.T. p. 24; Commonwealth Exhibit 1). The spread sheet included the MasterCard number utilized, the requested amount, the store number, identification of the register and clerk, and the total amount of the transaction. (N.T. pp. 25). The information was provided by several sources: the store asset protection team, the customer service departments, Shrink Trax,

---

[1] 18 Pa.C.S.A. §§ 911(b)(3), 911(b)(4), 903, 5111(a)(1), 5111(a)(2), 4120(a), 3922(a), 4106(a)(2), and 4106(a)(3), respectively.

[2] _See **Anders v. California**_, 386 U.S. 738 (1967); **_Commonwealth v. Santiago_**, 978 A.2d 349 (Pa. 2009).

and the credit card processor. (N.T. p. 26). Mr. Fones linked the transactions to Ms. Gibson by retrieving and reviewing videos and photographs in conjunction with the other data collected. (N.T. p. 27). Mr. Fones also created Commonwealth Exhibit 2, a report based upon all transactions of Ms. Gibson, date by date, at various Giant Food Stores throughout central Pennsylvania. (N.T. pp. 28-30). Nearly all the transactions were in the amount of $505.95. *Id.* In all these instances, the credit card company, Capital One, notified Giant that the charges were fraudulent. (N. T. p. 31).

In late December 2016 or early January 2017, Mr. Fones began receiving instantaneous alerts from the stores' credit card processor, Blackhawk, of multiple instances of $500 charges in a particular store in a short time period. (N.T. p. 32). The same pattern of transactions took place in numerous Giant Food Stores in Pennsylvania. (N.T. pp. 33-36). Capital One declined some transactions as fraudulent. In other instances, Capital One declined charges identified by the cardholder as fraudulent. *Id.* Mr. Fones filed charges with Pennsylvania State Police for Ms. Gibson's use of card in one instance in the amount of $12,000. (N.T. P. 36).

Mr. Fones also filed charges with Lower Paxton Township Police relating to an occurrence on February 14, 2017. (N.T. p. 37). Ultimately, police arrested Ms. Gibson based upon the information Mr. Fones provided. (N.T. p. 38; Commonwealth Exhibit 3).

Screen shots and video footage of transactions depicted Ms. Gibson presenting what were determined to be cloned credit cards at the register or at the customer service desk to purchase gift cards. (N.T. p. 39). Initially, Ms. Gibson was the focus of the investigation. *Id.* However, video footage included [Geddes-Kelly] and the driver of the vehicle from which Ms. Gibson exited, later identified as Joselito Joseph. (N.T. pp. 40-42; N.T. p. 51). Video footage depicted [Geddes-Kelly] purchasing money orders. Research into the internal systems which documented the purchases reflected Ms. Gibson and [Geddes-Kelly] using cloned credit cards numerous times to purchase gift cards. (N.T. pp. 43-45). Data and screen shots evidenced [Geddes-Kelly's] use of a debit card to purchase money orders in the amount of $499.59 (N.T. pp. 46-50). Some surveillance videos depicted Joselito Joseph or [Geddes-Kelly] standing near Ms. Gibson at a register or customer service during a transaction, appearing to watch Ms. Gibson. (N.T. pp. 51-53).

On February 14, 2017, Mr. Fones received an alert from the Giant Foods Corporate office of multiple purchases of gift cards over $500 at two Harrisburg stores by a person believed to be Tammy Gibson. (N.T. p. 56). Mr. Fones contacted the store manager to determine if the person buying the gift cards was first inserting the chip, then swiping the card. Mr. Fones asked the store manager for a description of the person. (N.T. pp. 56-57). Based upon the store locations of activity tracked, Mr. Fones expected that Ms. Gibson would next go to the Giant Store in Upper Allen Township. (N.T. p. 57). He soon received a call from the store manager that Ms. Gibson was in that store. *Id.*

Mr. Fones went to the Upper Allen Township store and approached Ms. Gibson at the customer service area and called her by name. (N.T. p. 58; p. 59). Mr. Fones recognized her as the same person depicted in the stores' video surveillance. (N.T. p. 62). Mr. Fones told Ms. Gibson that he was from the corporate office, that he knew what she was doing, and that she had been in the New Cumberland store buying gift cards. *Id.* When asked how she got to the store, Ms. Gibson stated that she came with her brother in a red car, which Mr. Fones knew to be false. *Id.* When asked if she would cooperate with him, Ms. Gibson responded that she would not. *Id.* She did provide her driver's license. Mr. Fones told her that police were on their way. *Id.* [A]lthough Mr. Fones attempted to block Ms. Gibson from leaving the store, she exited and got into a vehicle of which Joselito Joseph was the driver and [Geddes-Kelly] the passenger. (N.T. p. 60). The vehicle sped away as Upper Allen police cars pursued. (N.T. p. 62).

Ms. Gibson's fraudulent charge by which she purchased gift cards was typically made with a cloned card whereby the magnetic strip on the card contained the real cardholder's number but not a real chip. (N.T. p. 64). Ms. Gibson utilized the card by first inserting the chip, which was not accepted, then swiping the card, which enabled the sale card number to be read and accepted. (N.T. p. 65). Giant's Shrink Trax, ACI, and Blackhawk systems captured transaction data by which Mr. Fones and law enforcement entities pinpointed the purchase of the gift card with the cloned card, the full gift card number, and how the gift card was used. (N.T. p. 63).

On December 24, 2016, Ms. Gibson conducted fraudulent credit card transactions. Surveillance footage and corresponding Shrink Trax and ACI data tracked [Geddes-Kelly] making the same type of purchases of gift cards at other Giant locations. (N.T. pp. 74-

76). An unknown white female sometimes accompanied [Geddes-Kelly]. *Id.*

***

Ms. Gibson testified that she met [Geddes-Kelly] through a friend who knew [Geddes-Kelly]. (N.T. pp. 82-83). The friend asked if Ms. Gibson was "still [doing credit cards]". Ms. Gibson had never previously met [Geddes-Kelly] before he called her to arrange to pick her up at her house. (N.T. pp. 84). Before he picked her up, Ms. Gibson gave [Geddes-Kelly] her name. Another person accompanied [Geddes-Kelly] when he picked her up. (N.T. p. 85). Ms. Gibson identified [Geddes-Kelly] in the courtroom as the person who picked her up. *Id.* [Geddes-Kelly] told Ms. Gibson that they were going to the Giant stores because they were the only stores accepting the type of credit cards [Geddes-Kelly] was using. (N.T. p. 87). [Geddes-Kelly] gave Ms. Gibson credit cards bearing her name. *Id.* She understood that she would be able to use the cards by swiping them. (N.T. p. 97).

On five to ten occasions between December 2016 and February 2017, [Geddes-Kelly] picked up Ms. Gibson and provided her with credit cards. (N.T. p. 88; N.T. p. 101). The runs always took place with use of a rental car. (N.T. p. 102). [Geddes-Kelly] would instruct Ms. Gibson to enter the store and buy gift cards in the amount of $500. (N.T. p. 89; N.T. p. 102). The first time Ms. Gibson went into a store to conduct a fraudulent transaction, [Geddes-Kelly] accompanied her. *Id.* [Geddes-Kelly] did not speak to her while she was in the store. (N.T. p. 102). After the transactions, Ms. Gibson received compensation with cash or cards. (N.T. p. 90).

[Geddes-Kelly] and Joselito Joseph did not swipe cards, but rather, purchased money orders. (N.T. pp. 90-91). When shown Commonwealth Exhibits 5A and 8, Ms. Gibson identified [Geddes-Kelly] as the person buying money orders. *Id.* Ms. Gibson identified the other person in the photographs as the person who drove the vehicle when [Geddes-Kelly] picked her up. (N.T. pp. 92-93). Ms. Gibson identified [Geddes-Kelly] in photographs conducting transactions accompanied by an unknown female. (N.T. p. 93).

Ms. Gibson testified regarding the incident on February 14, 2017, during which Mr. Fones confronted her regarding the fraudulent

credit cards. (N.T. p. 94). [Geddes-Kelly] was in the store at the same time. *Id.* During the entire confrontation with Mr. Fones, Ms. Gibson spoke on the phone with [Geddes-Kelly]. (N.T. p. 95). [Geddes-Kelly] told Gibson that he had left the parking lot and drove to another location where she was to meet them. *Id.* When she located [Geddes-Kelly] and Joselito Joseph and got into the car, she gave the credit cards to [Geddes-Kelly]. (N.T. p. 96). [Geddes-Kelly] cut them up using scissors he had in the car and threw them out the window. (N.T. p. 96; p. 106). Police were unable to stop them. *Id.* After the incident, Ms. Gibson, and Joselito Joseph went to eat then switched to a different vehicle. (N.T. p. 97).

The Commonwealth also called as a witness Michael A. Car[l]son, a special agent with the Pennsylvania Office of the Attorney General. Mr. Fones provided Agent Car[l]son with a list of credit card numbers fraudulently used in Giant Food Stores. (N.T. p. 115). Agent Car[l]son testified regarding Commonwealth Exhibit 42, which listed fraudulently used Capital One cards identified by Mr. Fones['] investigation and reports from Capital One. *Id.* Capital One's charges back to Giant Food Stores for fraudulent purchase totaled $45,183.88. (N.T. p. 116; Exhibit 43).

With the gift card numbers provided to him by Mr. Fones, Agent Car[l]son obtained from Blackhawk information as to when and where the gift card was purchased, the amount of the gift card, and where it was spent. (N.T. p. 118). Agent Car[l]son utilized that information to link the gift card to the purchase transactions at Giant. (N.T. pp. 119-121). Agent Car[l]son then correlated that information to still photographs of Tammy Gibson making gift card purchase with a credit card determined fraudulent. (N.T. p. 119). [Geddes-Kelly] appeared in some of those photographs with Ms. Gibson. *Id.*

Agent Car[l]son tracked the number on Western Union money orders which were paid to the order of [Geddes-Kelly] to an address of 1000 Grant Street, Hazleton, Pennsylvania. (N.T. pp. 121- 122). The Western Union money orders were deposited to a TD Bank account bearing the name Jaleel Geddes-Kelly, with an address in Cambria Heights, New York. (N.T. p. 122). Commonwealth Exhibit 54 listed the money orders deposited into [Geddes-Kelly's] bank account. (N.T. pp. 123-125; Commonwealth Exhibit 54).

In addition, Agent Car[l]son obtained information from U.S. Bank of two gift card purchases made by Ms. Gibson and [Geddes-Kelly] at Giant Food Stores. (N.T. p. 127; Commonwealth Exhibit 50). Those cards were used in Pottsville, Pennsylvania to purchase money orders. (N.T. pp 128- 130; pp. 133-136; Commonwealth Exhibit 50).

Trial Court Opinion, filed 12/21/22, at 5-11 (footnote omitted).

A jury found Geddes-Kelly guilty of the above-mentioned offenses. The court imposed an aggregate sentence of 60 to 120 months' incarceration and imposed restitution. Geddes-Kelly filed a post-sentence motion, in which he alleged that the court erred in failing to determine his eligibility for the Recidivism Risk Reduction Incentive ("RRRI") program. He also requested a modification of his sentence claiming that the court's imposition of consecutive standard-range sentences was unduly harsh and excessive. The court held a resentencing hearing solely on the issue of Geddes-Kelly's eligibility for RRRI. After the resentencing hearing, the court found that Geddes-Kelly was eligible for RRRI and modified the sentence accordingly. The remainder of Geddes-Kelly's sentence was unchanged. This appeal followed.

Counsel's **Anders** brief identifies three potential issues: (1) a challenge to the sufficiency of the evidence; (2) a challenge to the weight of evidence; and (3) a challenge to the legal and discretionary aspects of sentence. **See Anders** Br. at 26. Geddes-Kelly's *pro se* response to counsel's **Anders** brief raises an additional challenge that his prosecution for the offense of identity theft was barred by the statute of limitations. **See** *Pro Se* Letter, filed 4/21/23, at 1 (unpaginated).

Before reviewing counsel's **Anders** brief, we must first determine whether counsel has satisfied the necessary requirements for withdrawing as counsel. **See Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). In order to withdraw pursuant to **Anders**, counsel must: 1) petition the court for leave to withdraw stating that, after a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or proceed *pro se*. **Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

> Further, in the **Anders** brief, counsel seeking to withdraw must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. If counsel meets the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Id.** at 355 n.5 (quoting **Commonwealth v. McClendon**, 434 A.2d 1185, 1187 (Pa. 1981)).

Here, we find that counsel has complied with the above requirements. In his **Anders** brief, counsel has provided a summary of the procedural and factual history of the case with citations to the record. Further, counsel's brief identifies three issues that could arguably support the appeal, as well as counsel's assessment of why the appeal is frivolous, with controlling case law and citations to the record. Additionally, counsel served Geddes-Kelly with a copy of the **Anders** brief and advised him of his right to proceed *pro se* or to retain a private attorney to raise any additional points he deemed worthy of this Court's review. **See** Motion to Withdraw, 3/20/23, at ¶ 5. As counsel has met the requirements of **Anders** and **Santiago**, we will proceed to the issues counsel has identified.

**Sufficiency of the Evidence**:

The first issue raised in counsel's **Anders** brief presents a challenge to the sufficiency of the evidence supporting Geddes-Kelly's convictions. Our standard of review when reviewing a challenge to the sufficiency of the evidence is *de novo*, while "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." **Commonwealth v. Rushing**, 99 A.3d 416, 420-21 (Pa. 2014). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). The Commonwealth may sustain its burden by means of

wholly circumstantial evidence. ***Commonwealth v. Dix***, 207 A.3d 383, 390 (Pa.Super. 2019). Further, the trier of fact is free to believe, all, part, or none of the evidence presented. ***Commonwealth v. Beasley***, 138 A.3d 39, 45 (Pa.Super. 2016). "[T]his Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." ***Commonwealth v. Smith***, 146 A.3d 257, 261 (Pa.Super. 2016).

Initially, we observe that although counsel's ***Anders*** brief challenges the sufficiency of the evidence as to all Geddes-Kelly's convictions, Geddes-Kelly's Rule 1925(b) statement only challenges the sufficiency of the evidence as to his convictions for dealing with proceeds of unlawful activities, access device fraud, and identity theft. Therefore, a challenge to the sufficiency of the evidence as to Geddes-Kelly's remaining convictions was not preserved and ordinarily would be deemed waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii); ***see also Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa.Super. 2009) (stating that an issue challenging the sufficiency of the evidence is waived when the Rule 1925(b) statement fails to specify the element or elements upon which the evidence was insufficient).

Nevertheless, "[p]ursuant to ***Anders***, this Court must review the merits of all claims set forth in an ***Anders*** brief in order to determine whether to grant counsel's petition to withdraw from representation, despite the fact that the issues have been waived." ***Commonwealth v. Bishop***, 831 A.2d 656,

659 (Pa.Super. 2003). Thus, we will address a challenge to the sufficiency of the evidence as to all of Geddes-Kelly's convictions.

*Access Device Fraud*:

The first issue that counsel has identified is a claim that the Commonwealth failed to establish that he and his co-conspirators used the credit cards without the owners' consent, as required to sustain a conviction for access device fraud.

Under the subsection for which Geddes-Kelly was prosecuted, a person commits access device fraud if he:

> publishes, makes, sells, gives, or otherwise transfers to another, or offers or advertises, or aids and abets any other person to use an access device knowing that the access device is counterfeit, altered or incomplete, belongs to another person who has not authorized its use, has been revoked or canceled or for any reason is unauthorized by the issuer or the device holder[.]

18 Pa.C.S.A. § 4106(a)(2).

Agent Carlson of the Pennsylvania Attorney General's Office testified that the owners of the credit cards that were used in the transactions at issue reported to Capital One that their cards were fraudulently used. N.T. Trial, 4/4/22, at 115-117. He stated that Capital One then provided him with information as to who the actual card owners were by the information on the magnetic strips of the cards. *Id.* at 116. In view of the testimony that the card owners had reported the transactions as fraudulent, there is no reasonable basis on which to argue that the Commonwealth did not prove that they were made without the consent of the card owners.

- 11 -

*Theft by Deception*:

The next issue identified by counsel is a claim that there was insufficient evidence to support Geddes-Kelly's conviction for theft by deception. Theft by deception is defined, in relevant part:

> **(a) Offense defined.--**A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
>
> > (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise[.]

18 Pa.C.S.A. § 3922(a)(1).

The Commonwealth charged Geddes-Kelly with theft by deception as follows: "Defendant intentionally obtained Visa gift cards from GIANT, valued in excess of $2,000, by using fraudulent/cloned credit cards belonging to other persons, in violation of 18 Pa. C.S.[A.] 3922(a)(1)." Information, filed 10/26/20, at 2.

Counsel claims that a challenge to the sufficiency of the evidence on the offense of theft by deception is frivolous. However, upon review of the record, we cannot agree that this issue is wholly frivolous. Contrary to what Geddes-Kelly was charged with in the Information, the evidence at trial was that Geddes-Kelly never purchased the gift cards. *See* N.T. Trial, 4/4/22, at 72, 144. Rather, Gibson and another unknown female were the ones who purchased the gift cards using the fraudulent credit cards. *See id.* at 72-74,

144. It may be that the evidence established that he was the ultimate recipient of the gift cards, or, as the **Anders** brief suggested, that the Commonwealth argued and established liability as an accomplice or his presence established that he "intentionally obtain[ed] or with[e]ld[] property." **Anders** Br. at 32. However, based on the arguments before us, it cannot be said that the claim that his theft by deception conviction is based on insufficient evidence is wholly frivolous, that is, that it "lacks any basis in law or fact." **Santiago**, 978 A.2d at 356. Accordingly, we must deny counsel's request to withdraw and remand for the filing of an advocate's brief on this issue. **See Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa.Super. 2007) (stating "if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief"); **see also Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa.Super. 2018) (*en banc*) (finding that this Court "need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them.").

*Identity Theft*:

The next issue identified is a claim that there was insufficient evidence to establish the offense of identity theft when the Commonwealth failed to establish evidence that there was non-consensual use of identifying information by actual people.

The offense of identity theft is defined as follows:

> **(a) Offense defined. --** A person commits the offense of identity theft of another person if he possesses or uses, through any

means, identifying information of another person without the consent of that other person to further any unlawful purpose.

18 Pa.C.S.A. § 4120(a). The statute further defines "identifying information" as:

> Any document, photographic, pictorial or computer image of another person, or any fact used to establish identity, including, but not limited to, a name, birth date, Social Security number, driver's license number, nondriver governmental identification number, telephone number, checking account number, savings account number, student identification number, employee or payroll number or electronic signature.

18 Pa.C.S.A. § 4120(f). Further, to establish the offense of identity theft, the Commonwealth must prove that the names at issue were actual people and not merely fictitious names. ***See Commonwealth v. Ballard***, 244 A.3d 815, 821 (Pa.Super. 2020).

Here, the Commonwealth presented sufficient evidence that the credit cards used in the transactions at issue belonged to actual Capital One customers and had "real" cardholders' numbers on the magnetic stripes of the cards. ***See*** N.T. Trial, 4/4/22, at 64, 116-17. Thus, Geddes-Kelly's claim is without merit.

*Dealing in Proceeds of Unlawful Activities*:

The next issue identified in counsel's ***Anders*** brief is that the Commonwealth failed to prove the offense of dealing in proceeds of unlawful activities pursuant to 18 Pa.C.S.A. § 5111.

Dealing in proceeds of unlawful activities is defined, in relevant part:

**(a) Offense defined.--**A person commits a felony of the first degree if the person conducts a financial transaction under any of the following circumstances:

(1) With knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity, the person acts with the intent to promote the carrying on of the unlawful activity.

(2) With knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity and that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of unlawful activity.

18 Pa.C.S.A. § 5111(a)(1)-(2).

The statute defines a "financial transaction" as: "[a] transaction involving the movement of funds by wire or other means or involving one or more monetary instruments. The term includes any exchange of stolen or illegally obtained property for financial compensation or personal gain." 18 Pa.C.S.A. § 5111(f). The same subsection defines "unlawful activity" as "[a]ny activity graded a misdemeanor of the first degree or higher under Federal or State law." *Id.* "Section 5111 thus presents explicit language which clearly defines unlawful activity as any felony or first degree misdemeanor, and targets the dealing in proceeds derived from any of those various illegal activities." *Commonwealth v. Barnhart*, 722 A.2d 1093, 1096 (Pa.Super. 1998).

Here, the evidence demonstrated that Geddes-Kelly conducted a "financial transaction," as that term is explicitly defined to include "any exchange of stolen or illegally obtained property for financial compensation or

personal gain." 18 Pa.C.S.A. § 5111(f). The property at issue was gift cards, which were illegally obtained through the unauthorized use of credit cards. Geddes-Kelly then purchased money orders that were deposited into his bank account. Further, the evidence satisfied Section 5111's element of "unlawful activity." Geddes-Kelly unlawfully took other people's credit card information to conduct these transactions, and it was done with the intent to promote the carrying on of the unlawful activities. Accordingly, this insufficiency claim fails.

*Corrupt Organizations and Conspiracy*:

The next issue presented is a claim that there was insufficient evidence to support Geddes-Kelly's conviction for corrupt organizations and the related conspiracy conviction.

Geddes-Kelly was convicted of violating section 911(b)(3), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 Pa.C.S.A. § 911(b)(3). He was also convicted of violating section 911(b)(4), which states that it is unlawful for a person to conspire to violate the corrupt organizations laws. 18 Pa.C.S.A. § 911(b)(4).

The term "enterprise" is defined as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce and includes legitimate as well as illegitimate entities and governmental

- 16 -

entities." 18 Pa.C.S.A. § 911(h)(3). A "pattern of racketeering activity" means "a course of conduct requiring two or more acts of racketeering activity one of which occurred after the effective date of this section." 18 Pa.C.S.A. § 911(h)(4). "Racketeering activity" includes the crimes of theft by deception and dealing in proceeds of unlawful activities. 18 Pa.C.S.A. § 911(h)(1)(i).

Here, the evidence was sufficient to establish that Geddes-Kelly was involved in an enterprise with Gibson and Joseph. These individuals conspired and repeatedly engaged in the commerce of buying gift cards with illegally cloned credit cards. Thus, the evidence was sufficient to support Geddes-Kelly's conviction for corrupt organizations and conspiracy.

**Weight of the Evidence**:

The next issue counsel has identified is a challenge to the weight of the evidence. *See Anders* **Br**. at 49. However, as counsel correctly notes, such a claim is wholly frivolous because it is waived.

A challenge to the weight of the evidence must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607(A)(1)-(3). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Cmt. to Pa.R.Crim.P. 607. If an appellant does not give the trial court the opportunity to provide relief, then there is no discretionary act that this Court can review. *See Commonwealth v. Thompson*, 93 A.3d 478, 491 (Pa.Super. 2014).

Here, Geddes-Kelly did not raise a weight claim in his post-sentence motion or at sentencing. He also failed to raise such a claim in his Rule 1925(b) statement. Accordingly, this claim is waived and waived issues are deemed frivolous for the purposes of **Anders** review. **See Commonwealth v. Tukhi**, 149 A.3d 881, 888 (Pa.Super. 2016); Pa.R.A.P. 1925(b)(4)(vii).

**Sentencing Claims**:

The next issues identified are challenges to the legality of Geddes-Kelly's sentence and claims that his offenses should have merged for sentencing purposes. **See Anders** Br. at 51.

"No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense." 42 Pa.C.S.A. § 9765.

Here, as pointed out by counsel, Geddes-Kelly was convicted of offenses that have different statutory elements and none of his offenses is a lesser included offense of the other. Thus, the offenses did not merge and a claim challenging the legality of Geddes-Kelly's sentence is frivolous.

The next issue presented in counsel's **Anders** brief is whether the court abused its discretion in imposing Geddes-Kelly's sentence. **See Anders** Br. at 52. This is a challenge to the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." **Commonwealth**

*v. Conte*, 198 A.3d 1169, 1173 (Pa.Super. 2018). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: "(1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code." *Commonwealth v. Green*, 204 A.3d 469, 488 (Pa.Super. 2019); *see also* Pa.R.A.P. 2119(f) (stating that an appellant who challenges the discretionary aspects of a sentence "shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence").

Geddes-Kelly's counsel has not included the requisite Pa.R.A.P. 2119(f) statement in his *Anders* brief. However, "[w]here counsel files an *Anders* brief, this Court has reviewed the matter even absent a separate Pa.R.A.P. 2119(f) statement. Hence, we do not consider counsel's failure to submit a Rule 2119(f) statement as precluding review of whether [an a]ppellant's issue is frivolous." *Commonwealth v. Zeigler*, 112 A.3d 656, 661 (Pa.Super. 2015) (internal citations omitted).

Nevertheless, this claim fails because he did not raise a substantial question. In his post-sentence motion, Geddes-Kelly claimed that the imposition of consecutive standard-range sentences was unduly harsh and

excessive. **See** Post-Sentence Motion, filed 7/22/22, at ¶ 19.[3] "Generally speaking, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal." **Commonwealth v. Gonzalez-Dejusus**, 994 A.2d 595, 598 (Pa.Super. 2010).

Further, in his *pro se* response to counsel's **Anders** brief, Geddes-Kelly additionally argues that the court "erred by not stating its reason for imposing [j]udgment at initial sentencing or at the re-sentencing hearing." *Pro Se* Letter at 2 (unpaginated). The record belies this claim. At the initial sentencing hearing, the court stated the following:

> All right. I've reviewed the presentence. I've also reviewed the letters from Dr. Cogan and from his I believe paramour Renata Crossdale about her illness.
>
> I also remember this trial. I thought the evidence was overwhelming. There was video that was presented throughout the trial involving the charges in question. And it was clear that every time that the phony cards were passed and passed for money orders, the defendant was either in the store or outside of the store.
>
> There's no question that he was the individual that was running the show. And we heard testimony from one of the individuals who passed the phony cards and received the money and who gave it

---

[3] In his Rule 1925(b) statement, Geddes-Kelly claimed that the trial court abused its discretion when it departed from the sentencing guidelines and imposed an aggravated sentence. **See** Rule 1925(b) Statement, 11/8/22, at ¶ 4. However, in his **Anders** brief, counsel recognized that the court sentenced Geddes-Kelly in the standard range of the sentencing guidelines – not in the aggravated range – and stated that the 1925(b) statement was "incorrectly phrased." **Anders** Br. at 56 n.2.

to him that he was, in fact, the ringleader of this. The evidence was overwhelming, and the jury thought so and they convicted him of these charges.

I will have some mercy because of his family situation, but I can't ignore the damage done. And although it is a Capital One credit card company, it is the pure theft of $18,276.45.

It is –– there's no question in my mind that the jury was correct in finding him guilty of corrupt organizations because he ran it, he had a sophisticated, in a sense, scheme. He had people who he used to cash these phony cards, and he received the proceeds from them.

And if it was once or twice, I don't believe that that would amount to the offense of corrupt organizations or conspiracy. But there were many, many cards passed, money received. And there's no question that not only does he need punishment for this but rehabilitation so that when he walks out of state prison, he's hopefully going to be a different person.

N.T. Sentencing, 7/12/22, at 14-15.

Moreover, the court had the benefit of a presentence report. *See id.* at 2. "A sentencing court's indication that it has reviewed a presentence report can satisfy the requirement of placing reasons for imposing the sentence on the record." *Commonwealth v. Bullock*, 170 A.3d 1109, 1126 (Pa.Super. 2017); *see also Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa.Super. 2009) (stating "where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed").

Geddes-Kelly's additional claim in his *pro se* response to counsel's *Anders* brief that the court should have stated its reasons for his resentence

- 21 -

on the record at his resentencing hearing also fails. The sole issue at resentencing was Geddes-Kelly's eligibility for RRRI. **See** N.T. Resentencing, 8/31/22, at 2. The court had already stated on the record its reasons for imposing the underlying sentence at the initial sentencing hearing. Accordingly, Geddes-Kelly's claim is without merit.

**Statute of Limitations**:

In his *pro se* response to counsel's **Anders** brief, Geddes-Kelly claims that his prosecution for the offense of identity theft was barred by the statute of limitations. **See** *Pro Se* Letter at 1 (unpaginated).

A statute of limitations claim is waived when not raised at the first available opportunity and when raised after the imposition of sentence. **See** **Commonwealth v. Carter**, 111 A.3d 1221, 1224 (Pa.Super. 2015). Because Geddes-Kelly did not preserve his statute of limitations claim by filing a pretrial motion seeking dismissal of the identity theft charge, he has waived the issue on appeal.[4]

**Conclusion**:

For the above reasons, we deny counsel's petition to withdraw and order counsel to file an advocate's brief within 30 days of the date of this memorandum. In addition to the above issue we have concluded is not

---

[4] We also observe that Geddes-Kelly failed to raise this claim in his 1925(b) statement. Thus, we also find waiver on those grounds. **See** Pa.R.A.P. 1925(b)(4)(vii).

frivolous, counsel may raise any other non-frivolous issues that he has identified. The Commonwealth shall have 30 days from that filing to respond.

Petition to withdraw denied. Counsel is granted 30 days from the date of this decision to file an advocate's brief, and the Commonwealth shall have 30 days thereafter to file a responsive brief. Jurisdiction retained.